**22-158**

# United States Court of Appeals for the Federal Circuit

IN RE WENGER S.A.,

*Petitioner.*

---

*On Petition for a Writ of Mandamus to the United States District Court for the Western District of Texas in Case No. 6:21-cv-00453 Honorable Alan D. Albright*

## RESPONSE IN OPPOSITION TO A PETITION FOR A WRIT OF MANDAMUS

DARIUSH KEYHANI
KEYHANI LLC
1050 30th Street NW
Washington, DC 20007
(202) 748-8950
dkeyhani@keyhanillc.com

*Counsel for Respondent*

JULY 29, 2022



FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 22-158 |
| **Short Case Caption** | In re Wenger S.A. |
| **Filing Party/Entity** | Swissdigital USA Co., Ltd. |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/29/2022

Signature: /s/ Dariush Keyhani

Name: Dariush Keyhani

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Swissdigital USA Co., Ltd. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**FORM 9. Certificate of Interest**

Form 9 (p. 3)
July 2020

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Frances H. Stephenson<br>Keyhani LLC | Jacqueline P. Altman<br>Naman Howell Smith & Lee, PLLC | John P. Palmer<br>Naman Howell Smith & Lee, PLLC |
| John A. "Andy" Powell<br>Naman Howell Smith & Lee, PLLC | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

    A.    The Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Wenger's Flawed Transfer Analysis. . . . . . . . . . . . . . . . . . . . . . 4

    C.    The District Court's Order Denying Transfer. . . . . . . . . . . . . . . 6

REASONS A WRIT OF MANDAMUS SHOULD NOT ISSUE HERE. . . . . . . . 9

I.    THE DISTRICT COURT CONSIDERED AND WEIGHED THE EVIDENCE PRESENTED RELATING TO NON-PARTY GROUP III IN ITS TRANSFER ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    A.    The District Court Properly Exercised its Discretion in Analyzing Non-Party Group III Sources of Proof Under the "Sources of Proof" Factor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

    B.    The District Court Properly Exercised its Discretion in Analyzing Non-Party Group III Witnesses Under the "Willing Witnesses" Factor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

    C.    The District Court Properly Exercised its Discretion in Analyzing Non-Party Group III Under the "Local Interest" Factor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

II.    THE DISTRICT COURT DETERMINED THAT WENGER FAILED TO MEET ITS BURDEN TO SHOW THAT TRANSFER WAS CLEARLY MORE CONVENIENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

    A.    The District Court Found the Private Interest Factors Predominantly Neutral. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    B.    The District Court Found the Public Interest Factors Predominantly Neutral. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
    358 F.3d 337 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 16, 17

*Cheney v. United States Dist. Court*,
    542 U.S. 367 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Defense Distributed v. Bruck*,
    No. 21-50327, 2022 WL 984970 (5th Cir. Apr. 1, 2022). . . . . . . . . . . . .15, 20

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Monterey Rsch., LLC v. Broadcom Corp.*,
    No. W-21-CV-00541, 2022 WL 526240 (W.D. Tex. Feb. 21, 2022). . . . . . .26

*Peteet v. Dow Chem. Co.*,
    868 F.2d 1428 (5th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Quest NetTech Corp. v. Apple, Inc.*,
    No. 2:19-CV-00118, 2019 WL 6344267 (E.D. Tex. Nov. 27, 2019). . . .21, 26

*In re Samsung Elecs. Co.*,
    2 F.4th 1371 (Fed. Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re TCO AS*,
    853 F. App'x 670 (Fed. Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . .5, 13, 16, 18

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . .7, 9, 10, 21, 22, 26

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*WSOU Invs. LLC v. Arista Networks, Inc.*,
    No. W-20-CV-01803, 2021 WL 6015526 (W.D. Tex. Nov. 5, 2021). . . . . . 17

*In re Wyeth & Wyeth Pharm., Inc.*,
    406 F. App'x 475 (Fed. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*In re ZTE Corp.*,
    No. 2022-122, 2022 WL 1419605 (Fed. Cir. May 5, 2022). . . . . . . . . . . . .25

**Rules**

Fed. R. Civ. P. 34. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

**Statutes**

28 U.S.C. § 1404(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Plaintiff Swissdigital USA Co., Ltd. ("Swissdigital" or "Plaintiff") submits this response in opposition to the Petition for a Writ of Mandamus (the "Petition" or "Pet.") filed by Defendant Wenger S.A. ("Wenger" or "Defendant") seeking an order directing the United States District Court for the Western District of Texas to transfer this case to the Southern District of Florida.

## ISSUE PRESENTED

Whether the district court's decision—declining to transfer this case pursuant to 28 U.S.C. § 1404(a) to the Southern District of Florida because Wenger failed to meet its burden to show that the transferee venue is clearly more convenient—is so patently erroneous that it warrants extraordinary and drastic mandamus relief.

## SUMMARY OF THE ARGUMENT

Wenger's Petition fails to meet this Court's high standard for drastic mandamus relief under which a petitioner must show that the right to the issuance of a writ is clear and indisputable. Wenger has not shown a clear and indisputable right to the issuance of a writ, having failed to show that the district court clearly abused its discretion in concluding that Wenger failed to meet its burden of demonstrating that the Southern District of Florida is clearly more convenient than the Western District of Texas.

First, a review of the district court's decision establishes that the court considered and weighed non-party Group III International ("Group III"), a Wenger

1

licensee, in its transfer analysis. The court analyzed Group III sources of proof and witnesses under the relevant factors, and examined whether Group III's presence in the Southern District of Florida gave rise to a heightened local interest. Contrary to Wenger's characterization, the parties disputed Group III's impact on the transfer analysis, and Swissdigital rebutted Wenger's evidence offered in support of Group III's relevance and importance. Finding Wenger's briefing unclear and its evidence insufficient, the district court appropriately exercised its discretion when weighing Group III's impact on the transfer analysis.

<u>Second</u>, the district court correctly concluded that Wenger failed to meet its elevated burden of showing that the Southern District of Florida is clearly more convenient than the Western District of Texas. In Wenger's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) ("Motion") and the subsequent briefing on the issue, Wenger never discussed the burden it must carry to meet the "clearly more convenient standard." Wenger erroneously argues that the district court denied transfer based on finding that just one factor weighs against transfer. But rather the court correctly denied transfer upon finding the private and public interest factors predominantly neutral. Since Wenger failed to meet its burden of showing that the Southern District of Florida is clearly more convenient, the district court appropriately denied transfer.

Accordingly, the Petition should be denied.

## **FACTUAL BACKGROUND**

**A. The Parties**

Swissdigital is a Delaware limited liability company with its principal place of business in New York. Appx021. Swissdigital sells high-tech intelligent backpacks and other innovative consumer goods throughout the United States. Appx021. Swissdigital is the owner of all rights, title, and interest in and to United States Patent Nos. 10,574,071, titled "Bag or Luggage with USB Charging Connector," and 10,931,138, titled "Sheath for USB Charger." Appx022.

Wenger is a Swiss corporation with its principal place of business in Switzerland. Appx021. Wenger "has marketed and sold high-quality goods, including . . . travel gear, backpacks, luggage[,] and computer cases in the United States," "either directly or through its authorized licensees." SAppx85. Wenger adopted its SWISSGEAR trademark "for use with travel gear, business gear, outdoor gear, . . . and other products" and "has expended millions of dollars annually [to] promot[e] and market[] . . . SWISSGEAR throughout the United States and the world." SAppx87, SAppx89. Wenger "operates" the SWISSGEAR website, www.swissgear.com, through which "[i]t sells its products worldwide." SAppx89, SAppx108.

On January 11, 2021, Swissdigital notified counsel for Wenger that several SWISSGEAR branded backpacks infringe the patents-in-suit. SAppx10. Later, by

3

email and over a Zoom conference call on March 30, 2021, Swissdigital provided Wenger a claim element by claim element analysis of infringement.   SAppx10. Despite having knowledge of its infringing products, Wenger has failed to cease its infringing activities.  SAppx16, SAppx20.  On April 30, 2021, Swissdigital filed this lawsuit, pleading claims for direct, induced, and contributory infringement against Wenger.[1]  *See* SAppx1-24.

### B. Wenger's Flawed Transfer Analysis

On March 12, 2022, Wenger moved to transfer this case to the Southern District of Florida and presented the district court with a flawed analysis of the venue's convenience.   *See* Appx028-044.   In its analysis, Wenger erroneously concluded that the Southern District of Florida is clearly more convenient than the Western District of Texas.  Appx043.  Wenger's arguments were not centered on the ***parties'*** contacts with the transferee forum, but instead Wenger relied heavily on ***non-party*** Group III in arguing for its incorrect conclusion.  *See* Appx028-044, *see also* Appx005.  Wenger referenced sworn declarations from its Chief Financial Officer Jean-Daniel Bussard and Group III's Executive Chairman John Pulichino in

---

[1] Wenger incorrectly states that "Swiss[d]igital's theory that Wenger infringes the asserted patents is not that Wenger makes or sells the accused products."  Pet. at 6 n.2.  Swissdigital's Complaint alleges that "Wenger directly infringes the patents-in-suit by selling and offering for sale . . . its infringing luggage products through at least its SWISSGEAR website."  SAppx9, *see also* SAppx14-17, SAppx19-21.

4

support of Group III's purported relevance and importance to the transfer analysis. *See* Appx026-027, Appx046-048.

Wenger's transfer analysis placed excess weight on Group III by improperly evaluating Group III evidence and witnesses under multiple factors.[2]  *See* Appx028-044; *see also* Appx005.  Wenger analyzed Group III evidence under both the "sources of proof factor" and the "other practical problems" factor.  *See* Appx035-037, Appx040.  Likewise, Wenger analyzed Group III witnesses as both willing and unwilling witnesses, skewing the second and third private interest factors towards transfer.  *See* Appx037-039.  And under the "local interest" factor, Wenger focused on Group III's connections to the Southern District of Florida rather than Wenger's own connections.  Appx041-042.  As a result of these flaws, Wenger erroneously concluded that several factors favor transfer.  Appx042-043.

---

[2] "The determination of 'convenience' turns on a number of public and private interest factors." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).  The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *"Volkswagen I"*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)).  The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

Swissdigital highlighted these errors in Wenger's analysis and argued that the difference in convenience between the two venues is negligible. *See* Appx049-064. Swissdigital disputed the relevance and importance of Group III to the transfer analysis, arguing that Group III evidence and witnesses would be unnecessarily duplicative of Wenger's evidence and witnesses. Appx057-058, Appx059-060. Furthermore, Swissdigital rebutted Wenger's sworn declarations by offering evidence from the public record—court filings from the Southern District of New York—in which Wenger made seemingly contradictory representations. *Compare* Appx027 *with* SAppx85, SAppx89. Conducting an accurate analysis, Swissdigital concluded that the factors are predominantly neutral, with one factor weighing against transfer, and that Wenger had failed to satisfy its elevated burden of proving that the Southern District of Florida is clearly more convenient. Appx062-063.

### C. The District Court's Order Denying Transfer

On May 11, 2022, the magistrate judge issued a Memorandum Opinion and Order ("Order") denying Wenger's Motion. Appx002. The court noted that "the parties' dispute centers around the relevance and importance of Group III" and determined that Group III "does not . . . impact[] the relevant factors as much as Wenger proposes." Appx005. Wenger simply "did not provide sufficient evidence to support the claims it made regarding Group III," and, as a result, "the relationship of Group III to Wenger [was] less than clear." Appx005-006. Relying on Wenger's

insufficient evidence, the court considered Group III in its transfer analysis and weighed Group III's impact in light of the available evidence. *See* Appx008-009, Appx011.

The magistrate judge found that the public and private interest factors are predominantly neutral; one factor "weighs against transfer," and another "only possibly favor[s] transfer by the slightest of margins." Appx009, Appx012. Accordingly, the court determined that "Wenger fail[ed] to show that the Southern District of Florida is 'clearly more convenient' than the Western District of Texas" and denied Wenger's Motion. Appx013 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) [hereinafter "*Volkswagen II*"] (en banc)).

Wenger objected to the magistrate judge's Memorandum Opinion and Order on May 25, 2022. *See* Appx073-085. In its objection, Wenger incorrectly asserted that the court "wholly discount[ed]" Group III in the transfer analysis and "wholly disregarded" evidence offered in support of Group III's relevance and importance. Appx078, Appx080. Furthermore, Wenger mischaracterized the sworn declarations it submitted as being "uncontroverted by Swissdigital." Appx080. Wenger raised specific objections to the court's analysis of three factors: the "sources of proof" factor, the "willing witnesses" factor, and the "local interest" factor. *See* Appx081-084.

On May 26, 2022, the district judge adopted the magistrate judge's Order denying Wenger's Motion. Appx001. The court "consider[ed] . . . the briefing on Defendant's Motion, the Order, and Defendant's Objections to the Order" and "conclude[d] that the [o]bjections [were] without sufficient merit." Appx001. The court stated that it "agree[d] with the conclusion reached" by the magistrate judge for the "reasons stated with the [magistrate judge's] Order." Appx001.

Following the denial of its Motion, Wenger delayed filing this Petition for almost two months. *See* Appx001. During that time, the district court reviewed the parties' briefing on claim construction, studied the asserted patents and their prosecution histories, conducted a claim construction hearing, and ruled on the disputed claim terms. Appx086. After the claim construction hearing resulted in an unfavorable outcome for Wenger, Wenger filed this Petition. *See* Appx087.

Wenger's Petition again argues that the district court failed to consider Group III in its transfer analysis and disregarded evidence offered in support of Group III's relevance and importance. *See generally* Pet. Furthermore, Wenger's Petition reiterates Wenger's specific objections to the "sources of proof" factor, the "willing witnesses" factor, and the "local interest" factor. *See* Pet. at 13, 18, 26. Wenger's Petition also raises a new issue—that was never raised to the district court— regarding the court's analysis of the "court congestion" factor. *Compare* Pet. at 23 *with* Appx073-085.

## REASONS A WRIT OF MANDAMUS SHOULD NOT ISSUE HERE

A writ of mandamus "is a drastic and extraordinary remedy reserved for really extraordinary cases." *Cheney v. United States Dist. Court*, 542 U.S. 367, 380 (2004) (internal quotation marks and citation omitted). Writs may be issued "in extraordinary situations to correct a clear abuse of discretion," but a mere "suggestion that the district court abused its discretion . . . is not a sufficient showing to justify mandamus relief." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020) (quoting *Volkswagen II*, 545 F.3d at 310). Only a clear abuse of discretion— an abuse of discretion that "produce[s] a patently erroneous result"—warrants mandamus relief. *Id.*

In the context of § 1404(a) transfers, petitioners "must demonstrate a clear and indisputable right to the issuance of a writ." *In re Apple Inc.*, 979 F.3d at 1336–37. To prevail on a transfer motion, the movant "b[ears] the burden of demonstrating that 'the transferee venue is clearly more convenient,'" *id.* at 1338 (quoting *Volkswagen II*, 545 F.3d at 314), based on "a number of public and private interest factors," *Action Indus., Inc.*, 258 F.3d at 340. And to prevail on mandamus review, the petitioner "bears the burden of demonstrating that the court's denial amounted

to a clear abuse of discretion." *Id.* (citing *Volkswagen II*, 545 F.3d at 308). In general, "substantial deference" should be given "to how a district court balances convenience[] and fairness factors that favor transfer against practical and public concerns if the cases were transferred." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021).

Here, Wenger has not shown a clear and indisputable right to the issuance of a writ, having failed to satisfy its burden as both movant and petitioner. A review of the district court's decision reveals that the court appropriately exercised its discretion when it considered and weighed the evidence presented relating to non-party Group III in its transfer analysis. Furthermore, the district court correctly determined that Wenger failed to show that the Southern District of Florida is clearly more convenient than the Western District of Texas.

## I.   THE DISTRICT COURT CONSIDERED AND WEIGHED THE EVIDENCE PRESENTED RELATING TO NON-PARTY GROUP III IN ITS TRANSFER ANALYSIS

The district court considered and weighed the evidence presented by the parties regarding non-party Group III in its transfer analysis. The court noted that "Wenger almost exclusively relies on Group III to support its arguments that the case should be transferred to the Southern District of Florida." Appx005. Wenger's Petition is plagued with mischaracterizations that the relevance and importance of Group III is "undisputed," "unrebutted," and "uncontested." *See* Pet. at 1, 2, 4–7,

13–14, 16–18, 28. A review of the record demonstrates that this is untrue. As the district court noted, both the relevance and importance of Group III were contested issues central to the parties' dispute. Appx005.

The district court appropriately exercised its discretion in weighing the arguments and evidence offered by both parties regarding Group III's impact on the transfer analysis. The court found that Wenger "place[d] excess weight on Group III to support its argument" and "did not provide sufficient evidence to support the claims it made regarding Group III." Appx005-006. In fact, the only evidence offered by Wenger in support of Group III's relevance and importance was the sworn declarations by Mr. Bussard and Mr. Pulichino—which Swissdigital rebutted with Wenger's own representations previously made to the Southern District of New York. Appx052.

For example, although Wenger claims that it "does not . . . sell, offer for sale, distribute, . . . or market luggage or travel gear with the S[WISS]G[EAR] Marks," Wenger, "either directly or through its authorized licensees, has marketed and sold high-quality goods, including . . . travel gear, backpacks, [and] luggage . . . in the United States." *Compare* Appx027 *with* SAppx85. Likewise, Wenger claims that it "does not . . . advertise . . . luggage or travel gear with the S[WISS]G[EAR] Marks," but Wenger "has expended millions of dollars annually in advertising, promoting and marketing . . . SWISSGEAR throughout the United States."

11

*Compare* Appx027 *with* SAppx89. The district court was presented with all of this conflicting evidence. Given these contradictory statements from Wenger, it was well within the district court's discretion to afford the sworn declarations reduced weight in the court's transfer analysis.

Wenger clings to the district court's single statement that it "[was] unable to give ***any*** weight to Group III in the transfer analysis." Pet. at 6 (quoting Appx006 (emphasis added)). An examination of the district court's analysis reveals that the court did indeed consider and weigh Group III evidence and witnesses under the appropriate factors and, after doing so, concluded that it could not give much weight to Group III.[3] For example, the court explained that it "analyze[d] [Group III] witnesses under the willing witnesses factor" and that "[Group III] evidence [was] considered under the first private interest factor." Appx008, Appx009. Likewise, the court considered "the presence of the accused infringer's licensee in the proposed transferee district" and determined that this "did not give rise to a heightened local

---

[3] While Wenger appears to use this statement to conclude that the district court wholly ***failed to consider*** Group III in its analysis, that is not what the court's Order says or what the court's analysis shows. Instead, the Order shows that the court did consider the evidence presented by the parties as to the importance and relevance of Group III under the relevant factors, but was unable to give the evidence ***any weight*** when analyzing certain factors. The court noted the instances where Wenger's arguments were unsupported and even contradicted by the evidence and Wenger's own admissions, leaving the court no choice but to conclude that Wenger's evidence cannot be given any weight. *See, e.g.*, Appx009 (finding that Group III "is to be given little or no weight under this factor").

interest." Appx011. Clearly, the district court did not "ignor[e] . . . sources of proof, witnesses, and local interests of Group III" or "the sworn evidence showing Group III's importance." Pet. at 1. Rather, the court considered Wenger's arguments and supporting evidence, exercised its discretion, and afforded reduced weight to Group III in its transfer analysis.[4]

Contrary to Wenger's assertions, the district court properly analyzed Group III under the "sources of proof" factor, the "willing witnesses" factor, and the "local interest" factor, as discussed below.

### A.     The District Court Properly Exercised its Discretion in Analyzing Non-Party Group III Sources of Proof Under the "Sources of Proof" Factor

The district court properly exercised its discretion in analyzing Group III sources of proof under the first private interest factor, "the relative ease of access to sources of proof." *Volkswagen I*, 371 F.3d at 203. Wenger mistakenly argues that "the district court completely ignored any sources of proof from Group III." Pet. at 6. But the court unambiguously states that "[Group III] evidence [was] considered under the first private interest factor." Appx009. The district court did not ignore

---

[4] The court made many specific findings regarding Group III in its analysis of multiple factors. *See* Appx007 (finding that Wenger's assertions regarding Group III sources of proof were "conclusory and self-serving" and insufficient to meet Wenger's burden); Appx008 (analyzing the contents of Wenger's affidavits and noting the contradictions within Wenger's own evidence as to whether Group III witnesses are willing or unwilling).

13

sources of proof from Group III but instead considered them and concluded that "Wenger's assertions that the sources of proof are in Florida . . . are conclusory and self-serving," a conclusion well within the court's discretion based on Wenger's failure to meet its burden. Appx007.

The district court determined that "Wenger . . . failed to identify any relevant documents Group III has that Wenger would not also have." Appx006. Wenger has repeatedly made the dubious claim that "*all* sources of proof *definitively* exist in the Southern District of Florida." Pet. at 15. In response, Swissdigital argued that Wenger, as owner and licensor of the Wenger and SWISSGEAR trademarks, must have financial documents, records of sales and inventory of all its licensees, and documents related to the design and quality of the products bearing Wenger's marks.[5] Appx057-058. And although Wenger maintains—without offering any specific details—that Group III has information "unattainable from either party in this case," Appx067, Wenger must make "an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in

---

[5] As Swissdigital argued to the district court, the accused products in this case are backpacks and luggage and components of backpacks and luggage that are readily visually accessible viewing the physical specimens of the products themselves, and the infringement analysis does not require any documentary design specifications or other sources of proof (e.g., source code). Appx059, *see also* SAppx13-14, SAppx18 (detailing the claim elements of the asserted patents).

the prospective forum." Appx007 (quoting *Defense Distributed v. Bruck*, No. 21-50327, 2022 WL 984870, at *11 (5th Cir. Apr. 1, 2022)).

Furthermore, Wenger mischaracterizes Swissdigital's argument, calling it "a unilateral agreement to the court." Pet. at 17. Contrary to Wenger's assertion, Swissdigital is not "willing to deliberately omit information that could be obtained from Group III"; Swissdigital merely contends that any relevant information Group III may possess is surely duplicative of Wenger's own records. Pet. at 17. Swissdigital is highly skeptical that Wenger—a "premier global provider of many goods" who "has expended considerable effort and expense in promoting . . . its SWISSGEAR mark[] . . . and goods sold thereunder"—would have, as Wenger claims, "at most . . . a handful of documents." Appx035, SAppx85, SAppx89. Arguing that "information relevant to [the] accused products is not within the possession, custody[,] and control of . . . Wenger" not only borders on the absurd, but also lacks sufficient support to meet Wenger's burden. Appx040. Wenger, as licensor, must have control over information relevant to the accused products, even if that information is not within its possession or custody. *See* Fed. R. Civ. P. 34 (obligating parties to produce discoverable information in their "possession, custody, *or* control" (emphasis added)).

The location of a defendant's documents "weighs in favor of transfer to that location," particularly in patent cases, where "the bulk of the relevant evidence

comes from the accused infringer." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Here, the accused infringer—the sole defendant in this case—is Wenger, and the bulk of the relevant evidence will come from Wenger. The district court properly considered Group III sources of proof and found that Wenger's sources of proof were to be given the majority of the weight in its analysis. And "[b]ecause Wenger keeps its documentary evidence outside of the United States, the location of its documents does not weigh in favor of either venue." Appx007. Accordingly, the district court appropriately exercised its discretion in finding "that this factor is neutral." Appx007.

### B.    The District Court Properly Exercised its Discretion in Analyzing Non-Party Group III Witnesses Under the "Willing Witnesses" Factor

The district court properly exercised its discretion in analyzing Group III witnesses under the third private interest factor, "the cost of attendance for willing witnesses." *Volkswagen I*, 371 F.3d at 203. Wenger again contends that "the district court abused its discretion by failing to consider Group III witnesses at all." Pet. at 18. But again, the court is clear that it "analyze[d] [Group III] witnesses under the willing witnesses factor." Appx008.

As the district court noted, Wenger improperly "analyzed Group III witnesses as both willing and unwilling witnesses." Appx008. Analyzing "the same proposed witness under multiple factors" skews the results, "produc[ing] excessive weight"

that may "drastically impact the outcome of a motion to transfer venue." *WSOU Invs. LLC v. Arista Networks, Inc.*, No. W-20-CV-01803, 2021 WL 6015526, at *4 (W.D. Tex. Nov. 5, 2021); *see also In re Apple Inc.*, 979 F.3d at 1340 (noting that if witness convenience was considered when assessing two of the private interest factors, "witness convenience will be inappropriately counted twice").

Swissdigital argued, and the district court agreed, that the actions of Mr. Pulichino, Group III's Executive Chairman, suggested that he and other Group III employees should be treated as willing witnesses. *See* Appx008, Appx058. Mr. Pulichino provided a declaration in support of Wenger's Motion and has provided declarations in support of other legal actions undertaken by Wenger in the past. *See* Appx046. Mr. Pulichino also willingly participated in a Zoom meeting with the parties to this lawsuit prior to the case being filed. Appx048. Furthermore, Wenger analyzed the ease and convenience of travel for Group III employees under the "compulsory process" factor, suggesting that they should instead be analyzed under the "willing witnesses" factor. Appx038.

The district court properly analyzed Group III witnesses under the "willing witnesses" factor, giving these witnesses not much—but some—weight. Appx008. The court noted that "Wenger failed to identify any Florida-based witnesses whose testimony is critical or relevant to this case." Appx009. Although Group III's Executive Chairman declared himself "knowledgeable," Wenger never explained

what information Group III witnesses possessed that was unattainable from Wenger. Apx046.  Swissdigital argued that "[t]he testimony of any Group III employees would be duplicative of the information already in the defendant licensor's possession" and "any testimony regarding the characteristics and features relevant to infringement," which are all visually accessible on the accused products, "will be addressed by the parties' experts."  Appx059.

Upon considering Swissdigital's arguments and Wenger's failure to identify Group III witnesses with critical information, the district court correctly determined that the willing witnesses factor "only possibly favor[s] transfer by the slightest of margins."  Appx009.  Contrary to Wenger's Petition, the court did not "reject[]" or "fail[] to consider Group III" witnesses but merely "diminish[ed]" the weight afforded them.  Pet. at 20.  Doing so was well within the district court's discretion.

### C.    The District Court Properly Exercised its Discretion in Analyzing Non-Party Group III Under the "Local Interest" Factor

The district court properly exercised its discretion in analyzing non-party Group III under the second public interest factor, "the local interest in having localized interests decided at home."  *Volkswagen I*, 371 F.3d at 203.  The court again noted Wenger's evidentiary deficiencies, which failed to establish the relevance and importance of Group III to this case.  Appx011.  And while the court considered Group III's presence in the Southern District of Florida, it determined

that "[t]he presence of the accused infringer's licensee . . . does not give rise to a heightened local interest." Appx011.

Although Wenger asserted that Group III "designs and sells the accused products," Appx041, the district court rightfully found that "the relationship of Group III to Wenger is less than clear," Appx005. Referencing the parties' briefs, the court highlighted that "neither party states whether Group III is a sole and exclusive licensee of Wenger or whether it is the sole and exclusive manufacturer of products accused of infringement in this case." Appx005. These questions—and the court's confusion—were justified. It is unclear, for instance, whether the accused products, some of which are also available outside of the United States— through a different licensee—are nevertheless "researched, designed, and developed" solely by Group III or by Group III in collaboration with other entities (such as Wenger). Pet. at 28. Since Wenger failed to provide the district court with sufficient detail regarding the extent of Group III's connections to the accused products, the court was "unable to give much weight to what facts are attributable to Group III." Appx005.

Additionally, Wenger argues that this case calls into question "the work and reputation of Mr. Pulichino and the reputation of Group III." Pet. at 28. But it is difficult to imagine how a judgment against the defendant licensor would impugn the reputation of the non-party licensee or its employees. Unlike Wenger, which

"has a global reputation" "that the purchasing public has come to know . . . and recognize," Mr. Pulichino and Group III have little to no public recognition. SAppx85, SAppx89. And here, the accused infringer—the sole defendant in this case—is Wenger. This case calls into question the work and reputation of Wenger, whose presence in Switzerland does not raise a heightened local interest in either venue.

Accordingly, the district court correctly determined that the "local interest" factor is neutral because Wenger lacks "a specific presence in either forum and the products are sold nationwide." Appx012. Again, Wenger mischaracterizes the court's decision and argues that Wenger's national presence should not give rise to a heightened local interest. *See* Pet. at 29. But the district court determined, as Swissdigital had argued, that Wenger's alleged nation-wide infringement gave neither the Western District of Texas nor the Southern District of Florida a heightened local interest. Appx011. And although the court considered the presence of Wenger's licensee in the Southern District of Florida, this general connection was not enough to tip the balance either way. Appx011. Lacking sufficient detail regarding Group III, it was appropriate and necessary for the court to exercise its discretion when weighing this factor.

## II.     THE DISTRICT COURT DETERMINED THAT WENGER FAILED TO MEET ITS BURDEN TO SHOW THAT TRANSFER WAS CLEARLY MORE CONVENIENT

The district court, upon examining the convenience of both the Western District of Texas and the Southern District of Florida, correctly determined that "Wenger ha[d] not met its burden to show that transfer is clearly more convenient." Appx013. As the court noted, movants bear the elevated burden of proving that the transferee venue is not just more convenient but rather "clearly more convenient." Appx004 (citing *Volkswagen II*, 545 F.3d at 314–15). To prove that a transferee venue is clearly more convenient, movants "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). And when the movant fails to satisfy its elevated burden, "the plaintiff's choice of venue should be respected." *Volkswagen II*, 545 F.3d at 315.

Here, Wenger failed to satisfy its elevated burden of proving that the Southern District of Florida is clearly more convenient than the Western District of Texas. In fact, notably missing from Wenger's Motion, Reply in Support of its Motion, Objections to the Order Denying its Motion, and Petition is ***any*** discussion of the burden Wenger must carry. *See* Appx034, Appx065-072, Appx077, Pet. at 10–11. Wenger erroneously argues that the district court denied transfer "based on . . .

21

finding *one factor* to weigh against transfer." Pet. at 2. *See also* Pet. at 30 ("The district court was only able to evade transfer by its erroneous determination that court congestion favors its forum."). But the court denied transfer based on finding the factors predominantly neutral—nowhere near satisfying the clearly more convenient standard. Appx012. As the court noted, "Wenger's burden 'is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.'" Appx012 (quoting *Defense Distributed*, 2022 WL 984970 at *11).

To determine the convenience of both venues, the district court analyzed several private and public interest factors, ultimately determining that these factors are predominantly neutral. Appx012. The court correctly found that the private interest factors are neutral, with only one factor "possibly favoring transfer by the slightest of margins." Appx009. Similarly, the court correctly found that the public interest factors are mostly neutral, with one factor weighing against transfer. Appx010. In reviewing the district court's decision, this Court employs a "highly deferential standard" whereby it "must leave the district court's decision undisturbed unless it is clear 'that the facts and circumstances are without any basis for a judgment of discretion.'" *In re TCO AS*, 853 F. App'x 670, 671 (Fed. Cir. 2021) (quoting *Volkswagen II,* 545 F.3d at 312 n.7).

**A.     The District Court Found the Private Interest Factors Predominantly Neutral.**

As discussed above, the district court determined that the "sources of proof" factor "does not weigh in favor of either venue" because "Wenger keeps its documentary evidence outside of the United States." Appx007. Indeed, Wenger's own analysis corroborates this point. *See* Appx036 ("Wenger's documents are located in Switzerland. . . . Accordingly, to the extent these documents affect this factor, they are neutral."). The court considered Group III sources of proof but found that Wenger's arguments and evidence offered to support the importance of these sources were "conclusory and self-serving." Appx007. Since "Wenger did not provide sufficient evidence to support the claims it made regarding Group III," the district court's determination was an appropriate exercise of its discretion. Appx006.

Under the "compulsory process" factor, the district court considered two individuals mistakenly identified by Wenger as unwilling witnesses: Zhijian "Hunter" Li—Swissdigital's owner—and Jennifer Meredith—Swissdigital's patent attorney. *See* Appx008, Appx038, Appx058. Identifying these individuals as unwilling witnesses requiring the use of compulsory process is a factual error. But as the court noted, both Mr. Li and Ms. Meredith "are outside the subpoena power of both [the Western District of Texas] and the Southern District of Florida," so this factual error did not lead to a patently erroneous result. Appx008. The court

23

correctly found "that this factor is neutral," Appx008, and again, Wenger's own analysis supports this conclusion, Appx038 ("To the extent that Group III is analyzed [under the willing witnesses factor], the compulsory process factor will be neutral . . . .").

As discussed above, the district court determined that the "willing witnesses" factor "only possibly favor[s] transfer by the slightest of margins." Appx009. The parties and the court all agreed that "the cost of attendance for willing witnesses is neutral for party witnesses." *See* Appx009, Appx039, Appx059. The district court analyzed the location of Group III witnesses but determined that this carried "little or no weight" given the disputed relevance of their testimony. Appx008. Since "Wenger failed to identify any Florida-based witnesses whose testimony is critical or relevant to the case," the district court's finding was an appropriate exercise of its discretion. Appx009.

Under the "other practical problems" factor, the district court noted that Wenger erroneously analyzed sources of proof considered under the first private interest factor. Appx009. Neither party identified any other practical problems, and the court found the factor neutral. Appx009.

### B.    The District Court Found the Public Interest Factors Predominantly Neutral

The district court found that the "court congestion" factor weighs against transfer, noting Wenger's more than five-month delay in bringing its Motion.

Appx010.  Wenger now argues that the district court should have determined that the "court congestion" factor is neutral.  Pet. at 23.  As a preliminary matter, Wenger never objected to the magistrate judge's analysis of this factor, waiving the argument it now attempts to make.  *See* Appx073-085, *see also In re ZTE Corp.*, No. 2022-122, 2022 WL 1419605, at *2 (Fed. Cir. May 5, 2022) (refusing to consider issues the petitioner failed to raise in the district court).  Accordingly, Swissdigital asks that the Court disregard Wenger's argument.

Nevertheless, the district court correctly found that the "court congestion" factor weighs against transfer.  The court noted that prior to Wenger's delayed Motion, "the parties exchanged preliminary infringement contentions . . . negotiated and submitted an agreed scheduling order . . . exchanged preliminary invalidity contentions . . . engaged in pre-claim construction exchange of proposed terms, constructions, and extrinsic evidence . . . and Defendant filed its opening claim construction brief."  Appx010.  Because "the [c]ourt and [p]arties have expended considerable resources on this case" and transfer "would result in a waste of these resources," the district court determined that "[t]he timing of Wenger's motion to transfer venue weighs against transfer."  Appx010.

The issue of wasted resources is heightened even more so now after Wenger's almost two-month delay filing this Petition.  Parties seeking transfer should act with reasonable promptness because, "[w]ithout reasonable promptness on the part of the

movant, a case proceeds, requiring the court to expend time and effort that might become wasted upon transfer." *In re Wyeth & Wyeth Pharm., Inc.*, 406 F. App'x 475, 477 (Fed. Cir. 2010) (citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). During the two-month interim, the district court reviewed the parties' briefing on claim construction, studied the asserted patents and their prosecution histories, conducted a claim construction hearing, and ruled on the disputed claim terms. Appx086. Only after the court's ruling—and an unfavorable outcome for Wenger—did Wenger file this Petition. *See* Appx087. Now, in light of Wenger's unreasonable delay, an issuance of a writ would result in a significant waste of resources already expended by the district court and the parties.

Even assuming, *arguendo*, that Wenger's waived argument was persuasive, the district court's error would not have produced a patently erroneous result warranting the issuance of a writ. If the "court congestion" factor was indeed neutral, Wenger would still fail to satisfy its elevated burden to "clearly demonstrate" that the Southern District of Florida is "clearly more convenient" because the factors would be overwhelmingly neutral. *Volkswagen II*, 545 F.3d at 314–15. And if "the evidence and factual determinations end in a 'close call,'" movants have failed to satisfy the clearly more convenient standard. *Monterey Rsch., LLC v. Broadcom Corp.*, No. W-21-CV-00541, 2022 WL 526240, at *17 (W.D. Tex. Feb. 21, 2022) (citing *Quest NetTech Corp.*, 2019 WL 6344267, at *7).

26

As discussed above, the district court determined that the "local interest" factor is neutral. Appx012. The court found that Wenger's alleged nation-wide infringement failed to give rise to a heightened local interest in either district. Appx011. Wenger's own analysis supports this determination. Appx042 ("[T]his does not tilt the venue analysis."). And because "the relationship of Group III to Wenger [was] less than clear," the court appropriately and necessarily exercised its discretion in weighing Group III's presence in the Southern District of Florida. Appx005. Accordingly, the district court concluded that "[t]he presence of the accused infringer's licensee . . . does not give rise to a heightened local interest." Appx011.

Neither party disputed that the remaining public interest factors—the "familiarity of the forum" factor and the "conflict of laws" factor—are neutral. *See* Appx042, Appx062. The district court found both these factors neutral. Appx012.

## CONCLUSION

For the foregoing reasons, Wenger has failed to show a clear and indisputable right to the issuance of a writ, and this Court should deny the Petition.

Dated: July 29, 2022

Respectfully submitted,

/s/ Dariush Keyhani
Dariush Keyhani

Keyhani LLC
1050 30th Street NW
Washington, DC 20007
Telephone: (202) 748-8950
Fax: (202) 318-8958
dkeyhani@keyhanillc.com

*Attorneys for Respondent Swissdigital USA Co., Ltd.*

## **CERTIFICATE OF COMPLIANCE**

This foregoing Response to Petition for Writ of Mandamus complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 21(d)(1) because it contains **6286** words; and

(2) the typeface requirements of the Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: July 29, 2022

/s/ Dariush Keyhani
Dariush Keyhani
*Attorneys for Plaintiff Swissdigital USA Co., Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.

I further certify that I caused courtesy electronic copies of this document to be sent to each counsel above and to the following additional counsel of record for Wenger S.A. in the district court:

> Christine E. Lehman, clehman@reichmanjorgensen.com
> Taylor Mauze, tmauze@reichmanjorgensen.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 29, 2022

> /s/ Dariush Keyhani
> Dariush Keyhani
> *Attorneys for Plaintiff Swissdigital USA Co., Ltd.*